CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

APR 0 2 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RANDY B. CASAR | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CIVIL ACTION NO. 7:07-cv-152 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, and his successors, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Randy B. Casar ("Casar") brought this action for review of the Commissioner of the Social Security Administration's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act") 42 U.S.C. §§ 401-433 and 1381-1383. This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and the case is pending on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. In this case, the Commissioner failed to appropriately consider certain medical evidence consisting of treatment records and a disability opinion from Casar's treating neurologist, Dr. Richard T. Jackson, and corroborating medical findings from Dr. Ted Burns, a neurologist who saw Casar in consultation. Given this error and the Commissioner's subsequent determination of disability on a subsequent application, this case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), with instructions

to determine whether disability should be awarded and payment of benefits made from the date of Dr. Jackson's disability opinion, August 12, 2004.

## I.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## II.

Casar was born on April 17, 1959 and completed the twelfth grade. (Administrative Record [hereinafter R.] at 72, 74) Casar previously worked as a machinist for an automotive parts manufacturer for more than twenty years, from July, 1981 to December, 2003. (R. 77)

On July 27, 2004, Casar filed his applications for DIB and SSI alleging that he became disabled on December 5, 2003, due to polyneuropathy, tendonitis, and problems with his legs and feet. (R. 67-68) Casar's claim was denied initially and on reconsideration. On December 2, 2005, the ALJ decided that Casar was unable to do his past relevant work but retained the residual functional capacity ("RFC") to do work at the unskilled sedentary level and denied the claims for benefits. (R. 17-27)

Following the ALJ's decision, Casar requested review by the Appeals Council and submitted additional evidence in support of his claim. (R. 12-13, 196-217) This information

2

was included in the administrative record but the Appeals Council found that it did not provide a basis to change the ALJ's decision. (R. 6-8) The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on February 23, 2007, when the Appeals Council denied Casar's request for review. (R. 6-9) Casar then filed this action challenging the Commissioner's decision.

Casar subsequently filed a new application for DIB and SSI benefits, with an alleged onset date of December 3, 2005, one day after the ALJ's prior decision. (Plaintiff's Addendum to Memorandum [hereinafter Add. Mem.] at 2). On November 1, 2007, the Commissioner determined that Casar met the medical requirements for disability benefits as of December 3, 2005, but stated that it could not consider the period prior to the ALJ's decision.

### III.

The undersigned recommends that this case be reversed and remanded because the ALJ did not appropriately consider the evidence before him, specifically the opinion of Dr. Richard T. Jackson, Casar's treating neurologist and the corroborating medical records of Dr. Ted Burns, who saw Casar in consultation on November 9, 2004. (R. 172-73) The ALJ does not address Dr. Jackson's August 12, 2004 opinion in any detail and instead discounts it simply by stating that is "is not supported by the record, including claimant's activities of daily living." (R. 24) Second, the ALJ's decision does not refer at all to the opinion of treating neurologist Dr. Burns from November, 2004, which corroborates Dr. Jackson's opinion. (R. 172-73)

Evidence before the ALJ included reports from Dr. Jackson, dated January 14, 2004 and August 12, 2004. (R. 130-136) Dr. Jackson's January 14, 2004 report diagnoses Casar with a painful lower extremity polyneuropathy. Significantly, the report reflects objective testing showing "moderately severe polyneuropathy." (R. 134) It also notes that Casar had a three-year

3

history of heel pain and a two-and-a-half year history of progressive sensory disturbance of the toes with mild associated balance problems. In his August 12, 2004 report, Dr. Jackson stated that Casar's neuropathy was gradually worsening, reflected in electromyogram (EMG) studies. (R. 130-132) Dr. Jackson opined that Casar was unemployable in any full time capacity because of his progressive diabetic polyneuropathy. (R. 131)

The ALJ, in rejecting Dr. Jackson's opinion, did not appropriately consider the treating specialist's opinion. Casar has a neurological problem caused by diabetes. However, the ALJ rejected the opinion of Dr. Jackson, Casar's treating neurologist, and placed greater reliance on an earlier evaluation of his treating orthopedist, Dr. Kenneth Gray, who had prescribed insoles for Casar's foot problems and physical therapy. (R. 138) While it is true that Dr. Gray kept Casar on work restrictions of half sitting/half standing, Dr. Gray also wrote that "I suspect he will be permanently impaired from this but the degree of impairment with his work activities he should be allowed to do long-term and is probably better off seen by neurology than us." (R. 138) As such, it appears clear that Dr. Gray deferred to the opinion of a neurologist for an assessment of the long-term impairment posed by Casar's peripheral neuropathy. Given Dr. Gray's deference to the opinion of a neurologist, it is difficult to see how the ALJ could have placed greater reliance on his opinion than that of Dr. Jackson, Casar's treating neurologist.

Furthermore, the ALJ did not consider at all the opinion of Dr. Burns, Casar's neurologist at UVA who saw Casar on May 4, 2004. EMG testing done that day was abnormal and demonstrated widespread sensorimotor polyneuropathy. (R. 177-180)

Further, the ALJ provided the greatest weight to the opinions of the non-treating state agency physicians as a basis for the RFC of sedentary work with restrictions. (R. 25) Careful review of the notes of the state agency physicians, however, suggests that they misread the

4

opinion of the treating neurologist as to Casar's ability to work. Indeed, Dr. Jackson stated that "it is my opinion that Mr. Casar is unemployable in any full time capacity, because of his progressive diabetic painful sensory more than motor polyneuropathy. He certainly is not able to do his present job, which requires long hours of standing." (R. 131) Despite this opinion of disability from any work, the state agency physicians appear to read Dr. Jackson's opinion only to preclude "his present job which requires long hours of standing." (R. 170) As such, the ALJ's substantial reliance on the opinion of the state agency physicians is misplaced.

For these reasons, it is recommended that this case be reversed and remanded with instructions to the Commissioner to determine whether disability should be awarded and payment of benefits commenced as of the date of Dr. Jackson's disability opinion, August 12, 2004.

## IV.

This case also should be remanded on the basis of new evidence, including both new and material medical evidence and evidence that Casar was awarded disability benefits in a subsequent application.

A remand on the basis of new evidence is warranted if: (1) the evidence is relevant to the determination of disability at the time the application(s) was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has made at least a general showing of the nature of the new evidence to the reviewing court. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Casar has made a general showing of the new evidence and there is clearly cause to excuse the failure to produce the new evidence at the time

5

of the Commissioner's decision, as his subsequent application and the bulk of the medical records dated after the ALJ's decision.[1] Accordingly, the only issue before the court is whether there is a reasonable possibility that the new evidence would have changed the outcome of the disability determination. Wilkins v. Sec'y Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

The new medical evidence consists principally of records concerning a neurological examination and testing performed by Dr. Rollin Hawley dated September 6, 2005. Dr. Hawley's report is consistent with Dr. Jackson's report from a year earlier and contains nerve conduction studies in the upper extremities that show Casar's moderately severe, painful, sensorimotor axonal neuropathy, probably diabetic, with superimposed bilateral sensory carpal tunnel syndromes, with sensory conduction block in the right carpal tunnel. (R. 214-217) Dr. Hawley noted decreased pinprick and touch sensation below Casar's knees and throughout both hands bilaterally. (R. 215)

Dr. Hawley's report corroborates Dr. Jackson's findings and directly contradicts the findings of the ALJ and the state agency physicians, which dismissed the findings of Dr. Jackson and found Casar's allegations regarding his limitations not to be credible. (R. 23) The ALJ found that Dr. Jackson's opinions were not supported by the record, including claimant's activities of daily living, and found that there is no medical support for Casar's statements regarding the alleged severity of his physical limitations. (R. 23-24)

---

[1] The records from the UVA Medical Center and Dr. Ted Burns submitted to the Appeals Counsel, (R. 197-203), post-date the ALJ's decision. Likewise, certain medical records from Carilion New River Valley Medical Center Diabetes Management Program also date after the ALJ's decision. (R. 204-213) The neurological consulting report of Dr. Rollin J. Hawley and attached nerve conduction studies are dated September 6, 2005, which is between the time of the administrative hearing and the ALJ's decision. (R. 214-217) There is no indication that these records were considered by the ALJ, and, in fact, a stamp on the face of Dr. Hawley's letter does not indicate that it was "received" until January 10, 2006, some five weeks after the ALJ's decision. As such, cause exists explaining why these records were not submitted earlier.

6

The ALJ found Casar has the RFC to perform a significant range of sedentary work. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. (R. 25) The ALJ found that Casar should not use his lower extremities to operate foot controls. The ALJ also found that Casar can occasionally climb stairs and ramps, but should not climb ladders, ropes or scaffolds. Casar can occasionally balance, stoop, kneel, crouch, and crawl, however he should avoid vibrations to his lower extremities and should avoid work around hazards. (R. 27) Relying on this determination, the ALJ posed a hypothetical question to the VE, which led him to find a significant number of jobs in the national economy that claimant could perform. (R. 26)

However, Dr. Hawley noted that Casar's condition has continued to deteriorate such that he has so much pain in his feet that it is hard to wear shoes or socks for more than two hours. He loses his balance easily, so that he can fall. His feet feel asleep all the time; and for the last two months he's had numbness and tingling in his hands as well. He cannot really walk anymore because of pain in his feet. (R. 214) For his carpal tunnel syndrome, Dr. Hawley suggested that Casar use wrist splints at night or when tempted to flex or extend his wrists. (R. 215) Dr. Hawley opined that Casar might require carpal tunnel injection or release. (R. 215) The VE testified at the hearing that it would be a problem for Casar to remove his shoes and socks at some point during the day for the jobs he identified in response to the hypothetical. (R. 258) Moreover, the VE testified that Casar would not be able to perform these jobs if he was required to lie down with his legs elevated for at least one hour during the work period in order to relieve pain in his lower extremities. (R. 259) Finally, if the ALJ had this report before him at the time

7

of the hearing, his hypothetical question would have included restrictions of the use of the hands, which would certainly have eroded the occupational base significantly.

This is a step five case, in which the ALJ determined Casar cannot perform his past relevant work but found he was not disabled because he retained the capacity for work that exists in significant numbers in the national economy. (R. 26) Dr. Hawley's evaluation contradicts this finding and corroborates plaintiff's testimony as to his limitations. As such, it creates a conflict and calls into doubt the ALJ's decision as to plaintiff's residual functional capacity as well as his credibility. Given the evaluation completed by plaintiff's treating neurologist, Dr. Hawley, and the contradictory hypothetical and RFC finding by the ALJ, it is clear that the Commissioner should have fully evaluated this new and material evidence.

The Commissioner's subsequent decision to award benefits also provides a basis for remand in this case. "Where a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence." Hayes v. Astrue, 488 F.Supp.2d 560, 565 (W.D. Va. 2007); Reichard v. Barnhart, 285 F.Supp.2d 728, 734 (S.D. W.Va. 2003). Such evidence is not presumptive of disability as the application may involve the subsequent onset of further physical or psychological problems and/or a different age classification. However, when "disability is found upon subsequent applications on substantially the same evidentiary background as was considered with respect to prior applications without such occurrences, especially when, as in this case, the claimant is found in the first case to be teetering on the edge of disability with only the capacity to perform light work with additional nonexertional limitations, has a limited education and suffers from significant pain, the disability onset date might reasonably be sometime prior to the ALJ's decision respecting the prior

8

applications in view of a subsequent finding of disability." Reichard, 285 F. Supp. 2d at 736, n. 9.

Casar has asserted, and the Commissioner does not contest, that a subsequent application for disability was filed on substantially the same bases as the instant application, namely polyneuropathy, tendonitis, pain in the legs and feet, and diabetes. The record reflects that this condition is slowly deteriorating. (R. 130-31) As such, there is a possible inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged physical limitations only one day apart, especially in a case such as this where the impairment is progressive in nature. See Hayes, 488 F. Supp. 2d at 565.

## CONCLUSION

Given the failure of the ALJ to properly evaluate the evidence from Casar's treating neurologists, Drs. Jackson and Burns, and the new and material corroborating evidence from neurologist Dr. Hawley, this case must be reversed as the ALJ's decision is not supported by substantial evidence. Given the opinions of these three neurologists, the progressive nature of Casar's polyneuropathy and the subsequent award of benefits one day after the ALJ's decision in this case, this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to determine whether it is appropriate to award benefits payable from the date of Dr. Jackson's disability opinion, August 12, 2004.

The Clerk is directed to transmit the record in this case to Hon. James C. Turk, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the

9

parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 2rd day of April, 2008.

/s/ Michael F. Urbanski
Hon. Michael F. Urbanski
United States Magistrate Judge